# JUNE, 1920

S. E. Cox v. St. Louis & San Francisco Railway Company.

No. 2624.   Decided June 2, 1920.

(222 S. W., 964.)

1.—Interstate Commerce.

A laborer employed by a railway in unloading at its destination freight shipped thereto from another State, is engaged in interstate commerce, and the master's liability for injuries received in such work is governed by the Federal Employer's Liability Act.   (P. 12).

2.—Same—Fellow Servants.

Under the Federal Employer's Liability Act the master is liable for injury by the negligence of any employee, regardless of whether he is a vice-principal of the master, or a fellow servant of the injured person.   (P. 12).

3.—Interstate Commerce—Master and Servant—Assumed Risk.

Where the defense of assumption of the risk by an injured servant is not eliminated by the Interstate Commerce Act, liability as affected by assumed risk is to be determined by the Common Law.   (P. 12).

4.—Assumed Risk—Assurance of Safety by Master.

Where the servant proceeds to do the master's work in the required manner, after calling attention to possible danger therefrom, in reliance on an assurance of safety by the master, through one selected by him to direct the work, and is injured by reason of such manner in which the work was directed to be done, he cannot be charged with assumption of the risk unless the danger of doing the work in the manner required is so obvious that a person of ordinary prudence would appreciate it, despite the assurance of safety.   (Pp. 13, 14).

5.—Same—Case Stated—Question of Fact.

A laborer who, with his foreman, was engaged in unloading railway freight from a truck was directed by the foreman to hold down the handle of the truck with one foot, in order to prevent it from flying up, while they together threw the bundles of freight from the truck onto the pile where they were to be placed. He objected, but was told by the foreman that the truck would not "dump" and required to proceed as directed. In so doing the handle escaped from his foot and, flying up, injured him. *Held*, that the question of his assmption of the risk was, under the evidence, one of fact for the jury, and he could not be held, as matter of law, to have assumed it.   (Pp. 13, 14).

6.—Concurring Negligence—Assumed Risk.

Though the risk of doing his work in the manner directed by the foreman should be held to have been assumed by the servant who protested but received assurance of his safety, yet, if the negligence of the foreman in

the performance of his part of the work combined with the dangerous method he directed to cause the injury, the servant could recover by reason of such negligence as a cause of his injury of which he had not assumed the risk. Texas & N. O. Ry. Co. v. Kelly, 98 Texas, 137, and Missouri Pac. Ry. Co. v. Somers, 78 Texas, 442, followed.  (Pp. 14, 15).

7.—Case Stated.

A laborer working with his foreman in unloading freight from a truck was directed, over his objection, to hold down the handles of the truck with one foot while they together threw the bundles upon the pile where they were to be placed. Negligence of the foreman in throwing his end of a package before the servant was ready with his caused the latter to release his foot from the truck handle, which flew up striking and injuring him. *Held*, that he could recover for his injury, by reason of such negligence of the foreman as a cause thereof, though the contributory cause, the dangerous manner of doing the work, be held a risk which he had assumed. (Pp. 14, 15).

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

Cox sued the railway company for personal injuries and recovered judgment. Defendant appealed and the judgment was reversed and rendered in its favor (159 S. W., 1042) whereupon appellee, Cox, obtained writ of error.

*Randell & Randell,* and *Wood, Jones & Hassell,* for plaintiff in error.

The first section of the Federal Employers' Liability Act applies to railroad employes engaged in the character of work that plaintiff was doing at that time and is not violative of the due process of law clause of the fifth amendment to the Federal constitution. The Federal Employes' Liability Act Cases, 223 U. S., 1, 56 L. Ed. 327; Mobile, J. & K. C. R. R. Co. v. Turnipseed, 219 U. S., 35, 55 L. Ed., 78; L. & N. R. Co. v. Melton, 218 U. S., 36, 54 L. Ed. 921.

An employee is not precluded from recovering damages for injuries through the negligence of his foreman, either in the selection of the manner of doing the work, or from his negligence in assisting the employee in doing the work in such manner if, but for such negligence, the work could have been done with safety to the employee; and this, even though the employee knew that under the manner thus selected, if the foreman was negligent in his part of the work, injury might result to him.  I. & G. N. R. R. Co. v. Owens, 124 S. W., 210; Galveston, etc., R. Co. v. Sanchez, 122 S. W., 44; T. & P. R. R. Co. v. Matkin 174 S. W., 1098; Rapid Transit Co. v. Edwards, 118 S. W., 838.

It does not follow that because the Trial Court predicated recovery on the negligence of the foreman in the manner in which he directed the truck to be unloaded, and because the Court of Civil Appeals found as a fact that the foreman was negligent in his selection of the manner of unloading the truck, that all risks that might arise under

such method would be assumed by plaintiff in error. For the reason that the foreman could have selected a manner of unloading that would have been safe, almost against any negligence, but did not choose to do so, does not preclude plaintiff in error from recovery for injuries received by a less safe method selected when his injuries were caused by an intervening act of negligence.

*Andrews, Ball & Streetman, Head, Smith, Hare, Maxey & Head, L. J. Lockett Jr.,* and *McReynolds & Hay,* for defendant in error.

At the time the plaintiff was injured, he was engaged in Interstate Commerce, and the law applicable to railroad employes who are engaged in Interstate Commerce governs and controls the disposition of this case, and the case is one to be tried and disposed of under the Act of Congress, commonly designated as the Federal Employers Liability Act. Freeman v. Powell 144 S. W., 1033; T. & P. Railway Co. v. White 177 S. W., 1185; C. R. I. & G. R. Co. v. DeBord 192 S. W., 767.

Plaintiff was a man of mature years; had been engaged in performing this character of work for a considerable period of time; the dangers incident to doing the work in the manner in which it was done were open and obvious and could have been as easily ascertained by him as by anyone else. So that if the work was done in a dangerous or negligent manner, plaintiff assumed the risk arising from the manner and way in which same was performed, and no liability rested upon the defendant for the injuries sustained by the plaintiff under the law and the facts applicable to the case. Haywood v. G. H. & S. A. Ry. Co. 85 S. W., 435; I. G. N. Ry. Company v. Figures, 89 S. W., 780; Bryan v. I. & G. N. Ry. Co., 90 S. W. 693; Railway Co. v. Lewis, 133 S. W. 1086; Carter v. Kansas City Ry. Co. 155 S. W., 643; M. O. & G. v. Black, 176 S. W. 755; Swann v. T. & P. Ry. Co., 200 S. W. 1131; H. & T. C. v. Alexander, 102 Texas 497; Kirby Lumber Company v. Hardy, 196 S. W. 211.

Cox was an adult of at least fourteen months experience in the work; in undertaking to do trucking he is presumed to know how to do such work, to know when it is done properly, and to appreciate the dangers incident thereto. Hightower v. Gray, 83 S. W. 254; Railway v. Watts, 63 Texas, 549; Railway v. Hester, 72 Texas, 43.

In the method of work of resting the handles of the loaded truck on the floor and removing a part of the load so that the bulk of the weight would be on the projecting end of the truck at the bottom thereof, causing the handles to fly up, unless held, the danger of the handles flying up is due to the natural operation of the law of gravity, which Cox is presumed to know, and he assumed the risk of same. Hightower v. Gray, 83 S. W., 254; Railway v. French, 86 Texas, 96.

The dangers incident to doing the work as it was done were obvious and the appellee assumed the risk of doing it in that way. Horton v. Ft. Worth Packing Co. etc., 76 S. W., 211; Hynson v. Railway, 86 S. W., 928; Marshall v. Railway, 107 S. W., 884; Railway v. Dempsey, 89 S. W., 786.

Cox's opportunity to know of any dangers in doing the work the way it was being done was as good as his employer's, and when he continued in the employment and did the work in that way he assumed the risk. Moore v. Railway, 69 S. W., 997; Ramm v. Railway, 92 S. W., 426; Railway v. Lempe, 59 Texas, 19; Ft. Worth Stockyards Co. v. Whittenberg, 78 S. W., 363; Railway v. McKee, 29 S. W., 544; Railway v. Scott, 62 S. W., 1077.

On facts much like those involved here in cases of employes injured handling cross ties the doctrine of assumed risk was applied. Railway v. Austin, 72 S. W., 212; Railway v. Martin, 51 S. W., 641; Railway v. Lyons, 34 S. W., 362.

The fact that Cox acted under instructions from Reams does not relieve him from consequences of assumed risk. San Antonio, etc. v. De Rodriguez, 77 S. W., 420; Railway v. Miller, 81 S. W., 535; Haywood v. Railway, 85 S. W., 433.

The work Cox was engaged in at the time of his injury was simple in character. He was experienced in that character of work, and was then and for a long time had been engaged in the performance of that character of work. Railway v. Bradford, 66 Texas, 732; Railway v. Somers, 78 Texas, 441; Railway v. Wood, 35 S. W., 879; Railway v. Parrish, 40 S. W., 193; Poindexter v. Kirby Lumber Co., 101 Texas, 325.

Mr. Justice GREENWOOD delivered the opinion of the court.

This was a suit by plaintiff in error, Cox, to recover damages of defendant in error, St. Louis & San Francisco Railroad Company, for personal injuries.

Cox was employed by the Railroad Company as a trucker at Hugo, Oklahoma. He was directed by his foreman, named Reams, to unload four bundles of paper, each weighing 110 pounds, by throwing them, with Reams' help, from the truck to the top of a pile some four feet in height, while resting the handles of the truck on the warehouse floor and while holding down the handles with one foot. Reams was authorized by the Railroad Company to determine the manner in which the paper should be unloaded and to direct Cox in unloading same. The paper was part of a shipment from Paris, Texas, to Hugo, Oklahoma. Cox had started to raise the truck handles so as to dump the paper from the truck to the floor, with a view of raising it from the floor to the top of the pile, when he was stopped by the above directions from Reams. Cox said when he re-

ceived his directions: "Mr. Reams, the truck will dump." Reams replied: "They won't do anything of the kind. Back up and let them down and put your foot on the truck handle and we will unload from the truck." While Reams and Cox were unloading the bundles in accordance with Reams' instructions and while throwing off the second bundle, the truck handles suddenly struck Cox in the chest causing his injuries. The handles flew up when Cox's foot released same, which was occasioned by the act of Reams in swinging his end of the bundle of paper before Cox was ready to swing his end and before it reasonably appeared to Cox that he was ready to make the swing. The acts of Reams, in the manner in which he directed the bundles to be unloaded and in too hastily swinging his end of the second bundle, were negligent; and, his negligence was the proximate cause of the injuries to Cox. All of the above facts were plead and have support in the evidence. The charge of the trial court authorized a verdict for Cox on findings of negligence of Reams, with respect to either the manner in which he directed Cox to do the work or the manner in which he (Reams) did his part of the unloading. The trial court entered a judgment for Cox on a general verdict.

The Dallas Court of Civil Appeals reversed the trial court's judgment and rendered judgment for the Railroad Company on two conclusions of law, viz: first, that Reams was a fellow servant of Cox, and, second, that Cox assumed the risk of injury from Reams' acts of negligence. 159 S. W., 1042.

Cox suffered his injuries while he was engaged in unloading freight shipped from Texas to Oklahoma. He was therefore injured while employed by the carrier in interstate commerce, and liability for his injuries is governed by the federal employers' liability act. Southern Pacific Co. v. Industrial Accident Commission, 251 U. S., 259, 40 Sup. Ct. 130.

The plain words of the federal act, no less than the decisions construing it, fix liability on the carrier for injuries resulting from the negligence of any employe of the carrier, regardless of whether the negligent employe is a vice-principal of the carrier or a fellow servant of the injured employe. So, the conclusion of the Court of Civil Appeals cannot be upheld denying a recovery to Cox on the ground that Reams was his fellow servant. Boldt v. Pennsylvania R. R. Co., 245 U. S. 445, 62 L. Ed., 385, 38 Sup. Ct., 139; Second Employers' Liability Cases, 223 U. S. 1, 38 L. R. A. (N. S.) 44, 56 L. Ed., 327, 32 Sup. Ct., 169.

The case not coming within the class as to which the defense of assumption of risk was eliminated by the Act of Congress, we must apply the common law rules in reaching a conclusion as to how far that defense was available to the Railroad Company.

In behalf of the Railroad Company it is urged that the negligence causing the injuries consisted in the manner in which the work was required to be done; that such manner was known to Cox, and that the dangers incident thereto were both obvious and appreciated by Cox, who was an experienced trucker. Though we eliminate from consideration the act of Reams in swinging too hurriedly his end of the bundle of paper, we cannot hold that it was conclusively shown that Cox assumed the risk of injury from the manner in which the paper was unloaded. It is true that Cox was an experienced trucker. It is true that Cox knew the manner in which he was ordered to do the work. And, it is true that Cox was apprehensive of danger at the time he received Reams' order. But, after Cox had voiced his apprehension of danger he was assured by one having the authority from the Railroad Company to determine and direct how the work should be done that his fears were unfounded; and, he testified that after receiving this assurance he believed that the work could be done as directed, with safety, by the exercise of ordinary care.

An apprehension of danger, which has been removed through unfounded assurances of safety, can have no more effect in determining whether a risk has been assumed, than if it had never existed. It must, of necessity, be a subsisting apprehension if it is to furnish an essential element to sustain the defense of assumed risk. Hence, the soundness cannot be questioned of the rule that where the servant proceeds to do the master's work in a required manner, involving negligence for which the master is responsible; after calling attention to possible danger therein, in reliance on an assurance of safety by the master through one selected by him to direct the work, and the servant is injured by reason of the manner in which the work is done, the master cannot charge the servant with the assumption of the risk of his injury, unless the danger of doing the work in the manner required is so obvious that an ordinarily prudent person must appreciate it, despite the assurance of safety. Industrial Lbr. Co. v. Bivens, 47 Texas Civ. App., 396, 105 S. W., 837; Orange Lbr. Co. v. Ellis, 105 Texas, 371, 150 S. W., 582; Gila Valley Ry. Co. v. Hall, 232 U. S., 102, 58 L. Ed., 521, 34 Sup. Ct., 229; Coal & Coke Ry. v. Deal, 145 C. C. A., 490, 231 Fed., 610; Lord v. Wakefield, 185 Mass., 218, 70 N. E., 123; Lack Singletree Co. v. Cherry, 166 Ky., 799, 179 S. W., 1072; Richey's Federal Employers' Liability Act, sec. 73, p. 185; Street's Ed. Shearman & Redfield on Negligence, sec. 215, p. 614.

Here it was the duty of Cox to obey Reams' directions. There is no evidence that Cox ever attempted the work of unloading with the aid of co-employe from a truck, with his foot on the handles, as Reams required the work to be done. His conduct was consistent with his reliance on Reams' assurances against danger. Clearly it was for the

jury to determine whether, in the face of Reams' assurances, Cox appreciated the risk of his injury or believed, as he testified, that the work could be safely performed; and, even more clearly was the question one on which conflicting inferences might be drawn, and hence essentially one for the jury, as to whether the risk of injury was under all the attendant circumstances so obvious that a person of ordinary prudence would have appreciated it, notwithstanding Reams' assurances.

As said by Justice Holmes in McKee v. Tourtellotte, 167 Mass., 69, 48 L. R. A. 543, 44 N. E., 1071: ''When we say that a man appreciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right. But if against this judgment is set the judgment of a superior,—one, too, who from the nature of the callings of the two men, and of the superior's duty, seems likely to make the more accurate forcast,—and if to this is added a command to go on with his work and to run the risk, it becomes a complex question of the particular circumstances whether the inferior is not justified, as a prudent man, in surrendering his own opinion and obeying the command.''

Under the charge of the trial court, a verdict was authorized for Cox on the finding that his injury was the proximate result of negligence on the part of Reams in the way in which he did his part of the work of unloading the paper; and, the Court of Civil Appeals find that Reams did swing his end of the bundle of paper before Cox was ready to swing and before it reasonably appeared to Reams that Cox was ready; and that such conduct was negligence on Reams' part, causing the injury.

As stated above, Cox did not, as matter of law, assume the danger arising from the endeavor to unload from the truck. There is an utter lack of evidence to support the conclusion that Cox assumed the risk attributable not to that endeavor but to Reams' want of care in pursuing it. . The law authorized Cox to assume that Reams would exercise ordinary care in doing his part of the work. The result of Reams' departure from the use of such care was instantaneous injury to Cox. The nature of Reams' act precluded knowledge of it by Cox or its discovery by him in time to have averted the injury. Under these conditions, there could be no assumption of the risk which arose from Reams' negligence in handling his end of the bundle of paper. Chesapeake & O. Ry. Co. v. Proffitt, 241 U. S., 468, 60 L. Ed., 1102, 36 Sup. Ct., 620; Chesapeake & O. Ry. Co. v. De Atley, 241 U. S., 314, 60 L. Ed., 1016, 36 Sup. Ct., 310; Texas & P. Ry. Co. v. Behymer, 189 U. S., 468, 547 L. Ed., 905, 23 Sup. Ct., 622; C. I. & P. R. Co. v. Ward, 252 U. S., 18, 40 Sup. Ct., 275, 64 L. Ed. ———; Pope v. Kansas City M. & O. Ry. Co. of Texas, 207 S. W., 514.

In T. & N. O. Ry. Co. v. Kelly, 98 Texas, 137, 80 S. W., court approved a declaration of Chief Justice Gaines in Missouri Pac. v. Somers, 78 Texas, 442, 14 S. W., 780, which is as applicable to acts of negligence by employees, for which the employer is answerable, as to defects, and which is: "Because a servant knows of one defect he does not take the risk of another of which he has no knowledge, and if both contribute to injure him, he is entitled to recover, provided but for the unknown defect the accident would not have happened."

In this case, since the Court of Civil Appeals made no finding against the existence of any fact essential to plaintiff's recovery and since we do not approve the conclusions of law, on which alone that court based its judgment, it becomes our duty, under the settled practice in this court, to reverse the judgment of the Court of Civil Appeals and to affirm the judgment of the District Court. Beck v. Texas Co., 105 Texas, 303; 148 S. W., 295; Tweed v. Telegraph Co., 107 Texas, 247. It is so ordered.

*Reversed and judgment of District Court affirmed.*